CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

EMILY R. DAHLKE (CABN 322196)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Emily.Dahlke@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:25-MJ-71447-MAG |
| Plaintiff, | **UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION** |
| v. | |
| JORDAN COOK, | |
| Defendant. | |

## INTRODUCTION

Jordan Cook conspired with her boyfriend, Larue Henderson, and other co-conspirators to violently rob marijuana delivery drivers at gunpoint, carjack them, steal their marijuana and cash, and sell the stolen marijuana for profit. In total, the scheme encompassed six armed robberies and carjackings from January 19, 2025, through April 22, 2025. On May 13, 2025, law enforcement searched Cook and Henderson's residence and recovered a loaded firearm in their bedroom. DNA results showed very strong support that Cook's DNA was on the loaded firearm, including the trigger and magazine. Cook is a felon and prohibited from possessing firearms, she also has a number of prior juvenile arrests. Cook participated in a scheme that resulted in six separate dangerous and violent armed robberies and carjackings. She poses a serious danger to the community and must be detained until trial.

# BACKGROUND

### A. Overview of the Conspiracy

Beginning in January of 2025 and continuing through April of 2025, a series of six violent armed robberies and carjackings occurred in the East Bay. The robberies all followed a unique modus operandi. Cook and her co-defendant boyfriend, Henderson, conspired together with at least one other individual, to lure marijuana delivery drivers to secluded areas using fraudulent customer accounts on various marijuana delivery apps. The scheme involved impersonating a customer in order to place a delivery order for marijuana products, for delivery in San Leandro, Berkeley, or Hayward. The requested delivery time was usually in the evening and the delivery location was often in areas that were difficult for the victim to exit quickly (such as dead-ends or narrow one-way roads). The unwitting delivery drivers would arrive to the delivery location with the marijuana products. When they arrived at the location, Henderson and sometimes another co-conspirator, forced the victim out of their car at gunpoint. In some instances, the victims were threatened that they would be shot or killed if they did not comply. At least two victims were physically struck during the course of the robbery and carjacking. In other instances, the victim was forced to lay on the street while Henderson and the other co-conspirators stole their vehicle, including all the marijuana inside the vehicle, the victim's cash, cell-phone, and in some cases, their identification.

Throughout the time period of the robberies and carjackings, Cook and Henderson advertised marijuana for sale. A month after the last robbery, law enforcement searched Cook and Henderson's apartment. Inside the apartment, law enforcement found nearly $10,000 worth of commercially packaged marijuana products (including marijuana that was the same brand as marijuana products stolen from one of the victim's) and a loaded firearm.

### B. Cook Lures the Victim to the Armed Robbery and Carjacking on January 19, 2025

Cook played a critical role in the conspiracy. For example, during the first robbery and carjacking on January 19, 2025, the victim was robbed at gunpoint by two males. Moments before being robbed and carjacked, the victim said that he talked to the "customer" who ordered the marijuana products through a mobile app. The "customer" was a woman who told the victim to stay in his car because she had kids in her apartment and did not want him coming up. As the victim attempted to make

the delivery, Henderson and another man came up to him and put a pistol to his stomach, robbing him of marijuana products, two cellphones and the keys to his vehicle. They stole his vehicle which contained $3,500, as well as marijuana products valued at $15,000 and his passport.

Berkeley Police Department ("BPD") discovered text messages on Cook's phone that were sent to Henderson the night of the January 19, 2025, robbery, around the time of the robbery. Cook texted Henderson "it says driver arriving", to which Henderson responded "Bet". Two minutes later Cook texted Henderson, "he's calling back" (the driver reported talking to a woman). She then texted Henderson "he's there". Photos on Cook's phone showed that the day after the robbery, Cook advertised marijuana products for sale.

  

Additionally, Henderson committed an armed robbery and carjacking of a marijuana delivery driver on March 5, 2025. Shortly after that robbery, Cook texted with an individual about selling them marijuana products saying, "I got hella flavors".

### C. Cook Lures the Victim to the Armed Robbery and Carjacking on April 11, 2025

Similarly, on April 11, 2025, Cook lured another victim to the crime scene. On April 11, 2025, a "customer" using an identity with the initials "T.H." placed an order for marijuana products. The customer who placed the order had a female voice and the customer identity for the account was a distinct photograph of a woman holding an ID card with the name that had the initials "T.H." . The company dispatched the victim to make the delivery. The delivery location was 24 Virginia Gardens in

Berkeley. While waiting for the customer to retrieve the product from the car, the victim was robbed and carjacked at gun point. He was ordered out of his car while a gun was pointed at his head. Henderson robbed the victim of his belongings, including the marijuana products the victim was to deliver, and then fled in the victim's vehicle.

When BPD searched Cook's devices a month after the robbery, they discovered an internet search entitled "photos of people holding ID". On April 4, 2025, Cook and Henderson exchanged text messages about altered photographs of people holding ID cards. On April 5, 2025, Henderson sent an image to Cook asking "passable?" Cook responded "u can tell it's hella animated." Henderson replied with an altered image saying "better" to which Cook replied "the hair is off asf [as fuck]". Also found on Cook's phone was the same photograph of a person holding an ID card with the "T.H." name, that was used to initiate the marijuana order on April 11, 2025. Law enforcement also found screenshots of the street-view and map area of 24 Virginia Gardens (the April 11, 2025 crime scene) that were taken approximately 30 minutes prior to the armed robbery and carjacking on April 11, 2025.

**D. The Gun Possessed by Cook was Used in a Shooting on March 20, 2025**

On March 20, 2025, a victim was shot in the arm after he drove away from an attempted carjacking.



The victim (who possessed a significant amount of marijuana in his car) was sitting in his car in Oakland when someone tried to break his car window. He quickly drove away, and as he was leaving, he was shot once in the arm, through the driver's side window (*see* above). He was treated at the hospital for his injuries.

Henderson, Cook's defendant's, phone was in the area of the shooting approximately five minutes before the shooting occurred. An eye-witness said she saw two young black males hiding behind cars on the sidewalk near where the shooting took place. She also saw a young black woman who was with the two men, and that they all left the scene quickly after the shooting.

When law enforcement searched Cook and Henderson's residence in May of 2025, they recovered a firearm. DNA testing revealed strong support that both Henderson and Cook's DNA was on multiple areas of the firearm, including the trigger and magazine. Information from the National Integrated Ballistic Information Network ("NBIN") revealed that the firearm recovered from Cook and Henderson's apartment was the firearm that was used to shoot the victim in the arm on March 20, 2025, in Oakland. As discussed, Cook is prohibited from possessing firearms because she has a prior felony conviction.

## LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a serious flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. *Id.* A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.* The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f)(2)(B).

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).

Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## ARGUMENT

### A. Cook Was Instrumental in the Commission of Multiple Violent Armed Robberies and Carjackings

Cook was an integral part of a dangerous and violent conspiracy. She assisted in the planning of the robberies and carjackings, helped create fake customer identification profiles, and lured delivery drivers to the delivery location, intending for them to be robbed and carjacked at gunpoint. She then helped sell the stolen marijuana after the robberies. Her DNA was on a firearm (including the trigger and magazine) that less than two months earlier was used to shoot a victim in the arm, after a failed carjacking attempt in Oakland. She is prohibited from possessing firearms, but did so anyway. When law enforcement asked her about the firearm, she denied knowledge of it, even though the gun was in her bedroom and her DNA was on the firearm.

### B. There is Clear and Convincing Evidence that Cook Presents a Danger to the Community

The nature and circumstances of the conspiracy demonstrate that Cook helped orchestrate a sophisticated and complex series of armed robberies and carjackings. These violent incidents put six victims in very real fear of harm and even death. The armed robberies and carjackings were carried out over a period of several months. Cook was integral to the commission of these robberies and carjackings. In addition to her felony criminal record, her conduct in this case speaks to her character and mental condition – that she is willing to organize dangerous crimes, lure innocent victims to be violently robbed and carjacked at gunpoint and use other people to achieve her criminal objectives. The crimes show a fundamental disregard for the welfare and safety of the public.

     While each bail determination requires an individual analysis specific to the defendant in front of the Court, magistrate judges in this district have routinely detained defendants who committed similar crimes, with personal characteristics similar to Cook. *See United States v. Landry*, No. CR1370716MAG1KAW, 2013 WL 3762260, at *1 (N.D. Cal. July 16, 2013) (22-year old defendant charged with Hobbs Act Robbery and Conspiracy detained) ; *United States v. Harris, 732 F. Supp. 1027 (N.D. Cal. 1990; United States v. Lopez, No. CR 12-70846 MAG KAW, 2012 WL 3655246, at *2 (N.D. Cal. Aug. 24, 2012)* (defendant who committed seven bank robberies over six week period detained as danger to the community); *United States v. Morton*, No. 12-00537 CW DMR, 2012 WL 2952419, at *1 (N.D. Cal. July 17, 2012) (22-year old defendant charged with three bank robberies presented risk of danger to the community that could not be mitigated); U*nited States v. Williams,* No. CR 12-0600 PJH KAW, 2012 WL 3638646, at *2 (N.D. Cal. Aug. 22, 2012) (robbing nine banks, some at gunpoint, raised significant possibility that defendant would pose an unmitigable danger to the community); *United States v. Medrano*, No. 24-CR-00226-BLF-5, 2024 WL 3048560, at *4 (N.D. Cal. June 17, 2024) (defendant who participated in robbery in furtherance of a RICO posed public safety risk that could not be mitigated by living out of district with custodian, as "acts violence can happen in any location, at any time").

     In *United States v. Moore*, the Honorable Kandis A. Westmore acknowledged the Defendant's considerable ties to the district as well as his strong family support and desire to donate his kidney to his ailing father, but still found that Defendant posed too serious a danger to the community to be released. *United States v. Moore*, No. CR-11-0905 SBA-2, 2013 WL 1365954, at *2 (N.D. Cal. Apr. 3, 2013). Specifically, Judge Westmore found that the defendant "was on the phone with a co-defendant the entire time that the codefendant was inside the bank committing the robbery. Although Defendant did not personally brandish a gun, he actively participated in the crime and helped his co-defendant use the gun to commit the robbery. This shows that he poses a danger to the community." *United States v. Moore*, No. CR-11-0905 SBA-2, 2013 WL 1365954, at *2 (N.D. Cal. Apr. 3, 2013).

     Similarly, in a Hobbs Act conspiracy case, *United States v. Davis*, Judge Westmore ordered a 20-year old defendant who had a "short" criminal history, strong ties to the community and family support detained, finding that "the nature and circumstances of the instant offense involve a relatively complex

conspiracy between Defendant and others to lure a victim who posted jewelry for sale on Craigslist to Oakland for the purposes of robbing her at gunpoint—a violent crime." No. CR-14-00093-JSW-2, 2014 WL 794182, at *3 (N.D. Cal. Feb. 24, 2014).

### C. Cook's Criminal History

This case is not Cook's first brush with the law. She has the following juvenile arrests: April 14, 2013 (battery); October 13, 2013 (battery); February 11, 2014 (battery); and July 28, 2014 (vandalism and battery). She was arrested as an adult on December 28, 2020 (grand theft, conspiracy, organized retail theft) and was later convicted of felony Second Degree Burglary on June 14, 2021. She was sentenced to 90 days in jail and two years of probation.

### D. The Proposed Release Conditions are Inadequate to Protect the Public

The pre-trial bail study notes a number of aggravating factors, including the nature and circumstances of the offense, Cook's mental health history, Cook's history of violent behavior, and her daily alcohol and drug use. The proposed release conditions do not adequately account for these aggravating conditions and the danger Cook poses. She has poor mental health and limited social support. Her employment status is also ambiguous.

### CONCLUSION

For all the reasons stated above, Cook poses a danger to the community that cannot be mitigated by conditions of release. The government respectfully requests that the Court detain Cook pending trial. If the Court is inclined to release Cook, it should impose stringent conditions that provide greater restriction on Cook's ability to commit new crimes, including releasing Cook to a custodian and placing her on home detention.

DATED: December 10, 2025                     Respectfully submitted,

                                             CRAIG H. MISSAKIAN
                                             United States Attorney


                                             */s/ Emily R. Dahlke*
                                             EMILY R. DAHLKE
                                             Assistant United States Attorney